Filed 2/9/23  P. v. Duenas CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080225 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN339701) |
| MAXIMILIANO DUEÑAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

In 2015, Maximiliano Dueñas pled guilty to transportation of a controlled substance and possession for sale of a controlled substance exceeding four kilograms.  Dueñas now appeals from a January 2022 order

denying his motion to vacate the judgment and withdraw his guilty plea under Penal Code section 1473.7.[1]  He argues that:  (1) the trial court erred by deeming his motion untimely; (2) the trial court erred by finding insufficient evidence to show that he did not meaningfully understand the adverse immigration consequences of his plea; and (3) he sufficiently demonstrated that he would have rejected the plea had he correctly understood the resulting immigration consequences.

We find no error in the trial court's determination that Dueñas failed to demonstrate that he did not meaningfully understand the adverse immigration consequences of his plea.  Accordingly, we affirm the order without deciding his other arguments regarding the timeliness of his motion or prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, the District Attorney for San Diego County filed an information charging Dueñas with:  (1) transportation of heroin (Health & Saf. Code, § 11352, subd. (a)); (2) possession for sale of heroin (Health & Saf. Code, § 11351); (3) transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)); and (4) possession for sale of methamphetamine (Health & Saf. Code, § 11378).  The information also alleged that the quantity of heroin referred to in counts one and two exceeded one kilogram (Health & Saf. Code, § 11370.4, subd. (a)(1)) and the quantity of methamphetamine referred to in counts three and four exceeded four kilograms (Health & Saf. Code, § 11370.4, subd. (b)(2)).

In June 2015, Dueñas completed a plea form and agreed to plead guilty to count three of the information.  On the form, Dueñas admitted that he

_____

[1]    Unless otherwise noted, all subsequent statutory references are to the Penal Code.

"transported a controlled substance" and "it exceeded 4 kilograms by weight." The form included the signature of a sworn Spanish language interpreter verifying that the interpreter "truly translated for the defendant the entire contents of [the] form" and that Dueñas "indicated understanding of the contents of [the] form" to the interpreter.

The form devoted an entire page to the immigration consequences of aggravated felonies, specifying "ANY CONVICTION OF A NON-CITIZEN FOR AN 'AGGRAVATED FELONY' AS DEFINED UNDER 8 U.S.C. 1101(A)(43), <u>WILL</u> RESULT IN REMOVAL/DEPORTATION, EXCLUSION, AND DENIAL OF NATURALIZATION." This page of the form expressly listed "TRANSPORTATION OF ANY CONTROLLED SUBSTANCE" as a crime that constitutes an aggravated felony. Further, Dueñas indicated his understanding of these immigration consequences on the form by personally initialing a box next to the following statement:

> "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an 'Aggravated Felony' listed on the back of this form, then I **will** be deported, excluded from admission to the U.S., and denied naturalization."

During his plea hearing on June 30, 2015, Dueñas testified, through an interpreter, that he understood the contents of the plea form, that his signature and initials on the plea form were authentic, and that he wished to proceed with the guilty plea. Dueñas confirmed that he had not consumed any drugs or alcohol in the previous 48 hours that would affect his ability to understand what was happening in court. Dueñas also responded "yes" when asked, "[d]o you understand that if you are not a U.S. citizen, this plea will

3

result in removal, deportation, exclusion from admission to the United States and denial of naturalization?"

In September 2015, the trial court sentenced Dueñas to a negotiated "split sentence" of five years in prison, followed by three years of mandatory supervision.

In June 2017, Dueñas was released from prison and transferred into the custody of United States Immigration and Customs Enforcement. One month later, he was deported to Mexico. Since the time of his deportation, Dueñas has been living in Mexico. Likewise, at the time of his arrest in 2014, Dueñas was living in Mexico and had a tourist visa to visit the United States. There is no evidence in the record that Dueñas ever lived in the United States.

In July 2021, Dueñas filed a motion to vacate the judgment and withdraw his guilty plea under section 1473.7, subdivision (a)(1). In this motion, Dueñas argued that he was entitled to relief because, at the time of his plea, he was unable to meaningfully understand the "actual or potential adverse immigration consequences" of his conviction. The motion set forth allegations that Dueñas's original defense attorney, who negotiated the pleas with the prosecutor, "did not advise [Dueñas] of the direct adverse immigration consequences of pleading guilty to transportation of a control[led] substance." Dueñas alleged that if he had been properly made aware of the possible implications of his plea to his immigration status, "he would have rather taken the risk of going to trial." He claimed that his plea, submitted on the basis of an improper lack of understanding of its adverse immigration consequences, was the product of prejudicial error, as contemplated under section 1473.7, subdivision (a)(1).

The People filed an opposition to Dueñas's motion. The People first argued that Dueñas's motion was untimely because it was not filed with reasonable diligence pursuant to section 1473.7, subdivision (b)(2). Second, the People asserted that Dueñas failed to meet his burden of proving by a preponderance of the evidence that an error had occurred. For support, the People cited Dueñas's signed plea form, which contained initialed affirmations by Dueñas that he understood the adverse immigration consequences of his pleas, and his plea colloquy with the trial judge, during which Dueñas was advised of the potential adverse immigration consequences of his plea and confirmed under oath that he understood. The People's opposition noted that the only evidence to the contrary proffered by Dueñas was his own "self-serving statement." Finally, the People alleged that Dueñas also failed to meet his burden to establish prejudice.

The court held a hearing on Dueñas's motion on January 31, 2022. Dueñas testified on his own behalf. On direct examination, Dueñas emphasized his ties to the United States, testifying that he has many family members, including his wife, who primarily live in the United States. According to Dueñas, he works remotely in his Tecate, Mexico home for a Tijuana satellite office of an American-based company. Dueñas testified that both his wife and son have U.S. citizenship. Regarding the circumstances of his plea, Dueñas testified that his attorney at the time, Jose Garcia Badillo, never spoke to him about deportation or how to fight his immigration case. Dueñas further testified that Badillo, using an interpreter, read the plea form to him hastily "like he wasn't reading everything the way he should have."

On cross-examination, Dueñas admitted that his immigration status was not a material factor in his decision to plead guilty while in jail, testifying that "I was worried about how much time I would be locked up. I

5

was afraid being in there.  I couldn't think about my immigration situation."
More directly, Dueñas responded "no" when asked by the prosecutor, "[a]t the
time when you entered the plea, you weren't thinking about the immigration
situation then, either, were you?"

After Dueñas had finished testifying, the People called Badillo as a
witness.  Badillo testified that in his practice as a criminal defense lawyer, he
typically determines a client's immigration status and considers how the
charges may affect that status, and he recalled doing so for Dueñas.  Badillo
discussed the immigration consequences of the charges with Dueñas and
made efforts to negotiate an "immigration-friendly plea" for him, but the
prosecutor was unwilling.  According to Badillo, "[u]ltimately, Mr. Dueñas
believed it was not worth the risk of the potential heftier jail sentence and
decided to plea."  Badillo specifically talked to Dueñas about the line on the
plea form regarding immigration consequences and explained to him the page
on aggravated felonies subject to deportation.  Badillo testified, "I'm sure we
had a discussion about [immigration consequences] when he signed the plea
agreement.  We had been discussing it through the entirety of the case,
because that was an issue for him."  Badillo ultimately negotiated the split
sentence for Dueñas to avoid a lengthier prison term.

On cross-examination, Badillo confirmed that in his practice as a
criminal defense attorney, he "routinely consult[s] with immigration
attorneys" and has received continuing legal education on immigration
consequences since 2001.  He further testified:  "This issue is very personal to
me.  My parents were immigrants and did not become U.S. citizens until I
was in law school.  I take it to heart, especially Latino people and
representing them, making sure they understand the process.  That's one of
the main reasons I became an attorney, to represent them."

At the conclusion of the hearing, the trial court orally denied Dueñas's motion. As a procedural matter, the court found that the motion was not timely filed as required by section 1473.7, subdivision (b)(2). On the merits, the court found the testimony of Badillo "to be quite credible," and determined that "the efforts by Mr. Badillo were focused on the immigration consequences, and he did everything that was possible to ty to work out a deal that would allow [Dueñas] to stay here in the country." By contrast, the court stated, "I don't find the testimony of Mr. Dueñas to be credible." Ultimately, the court found that Dueñas was "accurately informed of the consequences of his plea with respect to immigration consequences" and ruled that Dueñas failed to meet his burden on the merits of his motion.

## DISCUSSION

Dueñas argues that the evidence establishes that he did not meaningfully understand the adverse immigration consequences of his plea. We disagree. There is ample evidence in the record to support the trial court's ruling that Dueñas understood the immigration consequences of his guilty plea, including his initials and signature on the plea form, his statements at the plea hearing, and the section 1473.7 testimony of Dueñas's original defense counsel. The trial court had an opportunity to hear and observe the live testimony of both Dueñas and his original defense counsel at the hearing, and we are not in a position to second-guess its credibility determinations. Accordingly, we affirm the order on this ground without addressing the issues of timeliness or prejudice.

"[A]ppeals from section 1473.7 hearings are subject to independent review." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 755 (*Alatorre*), citing *People v. Vivar* (2021) 11 Cal.5th 510, 525 (*Vivar*).) "[A]n appellate court exercises its independent judgment to determine whether the facts satisfy the

rule of law." (*In re George T.* (2004) 33 Cal.4th 620, 634.) "When courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on 'the credibility of witnesses the [superior court] heard and observed.'" (*People v. Espinoza* (Jan. 26, 2023, S269647) __ Cal.5th __, __ [2023 Cal. LEXIS 254, at p. *10] (*Espinoza*), quoting *Vivar*, at p. 527.)

The relevant portions of section 1473.7 provide:

> "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:

> "(1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel. [¶] . . . [¶]

> "(e) When ruling on the motion:

> "(1) The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a). . . ."

Section 1473.7 offers "postconviction relief for noncitizens who pleaded guilty to a crime without fully comprehending the immigration consequences that might follow." (*Alatorre*, *supra*, 70 Cal.App.5th at p. 752, citing Stats. 2016, ch. 739 (Assem. Bill No. 813) § 1.) To receive relief under the statute, "[t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, [2023 Cal. LEXIS at p. *10].)

8

A defendant seeking to withdraw his plea based on inadequate advisement of immigration consequences must corroborate such assertions with " 'objective evidence.' " (*Vivar*, *supra*, 11 Cal.5th at p. 530; see also *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223–224 ["An allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures."]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 ["In a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' "].)

Dueñas contends that "[t]he record provides sufficient objective evidence to show by a preponderance of the evidence that he did not meaningfully understand the immigration consequences of pleading guilty." For support, he cites: (1) his declaration dated July 9, 2021; (2) his testimony at his section 1473.7 hearing; (3) the testimony of Badillo at Dueñas's section 1473.7 hearing; and (4) Dueñas's "age and his inexperience with the United States, the criminal justice system and the immigration proceedings" at the time of his plea.

We reject this argument. Dueñas's reliance on his own declaration and testimony is misplaced because the trial court found the contrary testimony of defense attorney Badillo to be "quite credible" and Dueñas's testimony not credible. Badillo's testimony that he advised Dueñas of the immigration consequences of his guilty plea was also corroborated by Dueñas's initials and signature on the plea form and his sworn statements at the plea hearing. Because the trial court heard live testimony from both Dueñas and Badillo at the section 1473.7 hearing, we must defer to its resolution of this factual conflict. (*Espinoza*, *supra*, [2023 Cal. LEXIS at p. *10]; *Vivar*, *supra*, 11

9

Cal.5th at p. 527; *Alatorre*, *supra*, 70 Cal.App.5th at p. 755.) Moreover, the issues Dueñas highlights regarding uncertainties in Badillo's recollection were for the trial court to weigh in making its credibility determination— they do not make Badillo's testimony so inherently improbable that we may reject it on appeal. (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 725 ["inherently improbable" standard for rejecting testimony on appeal "means that the challenged evidence is 'unbelievable per se' . . . , such that 'the things testified to would not seem possible' "].)

Finally, Dueñas's age and inexperience, although undoubtably relevant, do not outweigh as a matter of law the substantial evidence that he meaningfully understood the immigration consequences of his guilty plea. His plea form contained an initialed acknowledgement that he would be subject to adverse immigration consequences as a result of his conviction, and an interpreter verified his understanding. At his plea hearing, Dueñas confirmed that he understood he would be subject to these adverse immigration consequences. Badillo's testimony reveals that immigration discussions were part of his consultations with Dueñas throughout the proceedings, including in connection with the guilty plea. Dueñas's mere status as a young Mexican national, inexperienced with criminal proceedings and immigration policies in the United States, does not overcome the numerous facts in the record establishing that his plea was duly informed with respect to immigration consequences.

## DISPOSITION

The January 31, 2022 order denying Dueñas's section 1473.7 motion is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

11